**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM H. YOUNG, | : | |
| *Plaintiff,* | : | Case No. 1:22-cv-553 |
| | : | |
| vs. | : | Judge Jeffery P. Hopkins |
| | : | |
| COLUMBUS LIFE INSURANCE | : | |
| COMPANY, | : | |
| *Defendant.* | : | |

**OPINION AND ORDER**

William H. Young ("Plaintiff") filed this purported class action against Columbus Life Insurance Company ("Defendant") alleging breach of contract (Counts I, II and III), conversion (Count IV), and declaratory relief (Count V). This case is before the Court on Defendant's Motion to Dismiss (Doc. 20), Plaintiff's Memorandum in Opposition (Doc. 25), and Defendant's Reply (Doc. 26).

For the reasons stated below, Defendant's Motion (Doc. 20) is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

Plaintiff purchased a flexible premium adjustable life insurance policy ("the Policy") from Defendant in 1997. Compl., Doc. 1, ¶ 10. Unlike standard term life insurance, the Policy included both a death benefit and a savings or interest-bearing component, which could accumulate value over time. *Id.* ¶ 17.

The Policy provided that the "Account Value" would be calculated as follows:

The account value on the policy date shall be the first premium less the monthly deduction for the first policy month less the monthly expense charge shown on

Page 3. In calculating this monthly deduction, the policy date is treated as the first monthly anniversary day. On each later monthly anniversary day, the account value shall be calculated as (1) plus (2) plus (3) minus (4) minus (5) where:

    (1)    is the account value on the preceding monthly anniversary day adjusted for any partial surrender.

    (2)    is one month's interest on item (1).

    (3)    is all premiums (except the first payment which put this policy into effect) received since the preceding monthly anniversary day.

    (4)    is the monthly deduction for the month following the monthly anniversary day.

    (5)    is the monthly expense charge shown on Page 3 . . . .

*Id*. ¶ 18. The "monthly expense charge shown on Page 3," *i.e.*, number (5), was $7.00. *Id.* ¶ 28.

The Policy also provided that the "monthly deduction," *i.e.*, number (4), was calculated as follows:

Each monthly deduction on the monthly anniversary day consists of the cost of insurance plus the cost of additional benefits provided by the rider.

The cost of insurance for the insured is determined on a monthly basis. To determine such cost:

    (1)    Divide the Death Benefit at the beginning of the policy month by one plus the guaranteed monthly interest rate.

    (2)    Subtract the account value at the beginning of the policy month (excluding the monthly deduction from its calculation).

    (3)    Add the cost of additional benefits provided by the rider.

    (4)    Divide the resulting number by 1000 to get the number of thousands of dollars of insurance.

    (5)    *Multiply by the cost of insurance rate as described in the Cost of Insurance Rates section.*

The cost of insurance for benefits provided by riders will be determined in those riders.

*Id*. ¶ 24 (emphasis added).

The "Cost of Insurance Rate" section in the Policy further provided as follows:

> The monthly cost of insurance rates are shown on Page 6.[1] The actual rates charged may be lower but those shown are the maximum that could be charged. Any change in the cost of insurance rates shown will have no effect on the cost of any insurance for any rider attached to this policy. Any change in the monthly cost of insurance rates charged will be on a nondiscriminatory basis toward any one insured and will apply to all insureds of the same age, sex, and classification whose policies have been in effect the same length of time, not to exceed the maximum rates shown on Page 6. *The cost of insurance rates will be determined by us based on our expectations as to future mortality experience.*

*Id*. ¶ 25 (emphasis added).

Plaintiff alleges that although these provisions in the Policy authorized Defendant to deduct a monthly cost of insurance charge from his Account Value, Defendant was required to: (1) calculate the cost of insurance charge using the cost of insurance rates, and (2) determine the cost of insurance rates by exclusive reference to Defendant's expectations of future mortality experience. *Id*. ¶¶ 26, 27, 30. Defendant, however, allegedly used other, unauthorized factors, including, but not limited to, non-mortality-related expenses, when determining the cost of insurance rates. *Id*. ¶ 31. Plaintiff contends that although Defendant issued annual account statements showing the monthly cost of insurance deductions from his Account Value, the statements affirmatively concealed Defendant's use of unauthorized factors to determine the cost of insurance rates that Defendant used to calculate his monthly cost of insurance. *Id*. ¶ 39. As a result, Plaintiff did not discover Defendant's contractual breaches until he retained legal counsel in June 2022. *Id*. ¶ 40.

In his Complaint, Plaintiff concedes that the at-issue Policy provisions authorized Defendant to deduct a $7.00 monthly expense charge from his Account Value. *Id*. ¶¶ 23, 28. But in his view, by allegedly using non-mortality-related expenses to determine the cost of

---

[1] Page six of the Policy includes a "Table of Guaranteed Maximum Insurance Rates per Thousands of Dollars of Insurance Based on 1980 CSO Nonsmoker Mortality Table, Age Last Birthday" that generally demonstrates that monthly maximum cost of insurance rates increased as policy holders aged.

insurance rates, and then by using those rates to calculate the monthly cost of insurance deductions, Defendant ultimately deducted from Plaintiff's Account Value more than the $7.00 maximum monthly charge allowed by the Policy. *Id.* ¶¶ 61, 62.

Beyond this, Plaintiff also alleges that because people are living longer, mortality expectations have generally improved since the Policy was originally priced. *Id.* ¶ 66. Despite this, Plaintiff asserts that Defendant failed to reduce the cost of insurance rates—rates that should reflect Defendant's evolving future mortality expectations—and that Defendant's failure to reduce those rates resulted in higher monthly cost of insurance deductions. *Id.* ¶¶ 27, 66, 67.

Plaintiff filed his Complaint on behalf of himself and a purported class of other similarly situated policy holders who purchased flexible premium adjustable life insurance policies from Defendant. He alleges that Defendant's practices resulted in breaches of contract (Counts I, II, and III) and conversion (Count IV). He also alleges a separate claim for declaratory relief (Count V). Defendant moves to dismiss all of Plaintiff's claims. Doc. 20. The motion is fully briefed and ripe for adjudication.

## II.     STANDARD OF REVIEW

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This, however, requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, under the plausibility standard set forth in *Twombly* and *Iqbal*, "courts play an important gatekeeper role, ensuring that claims meet a plausibility threshold before defendants are subjected to the potential rigors (and costs) of the discovery process." *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020). "Discovery, after all, is not designed as a method by which a plaintiff discovers whether he has a claim, but rather a process for discovering evidence to substantiate plausibly-stated claims." *Id.*

In deciding a motion to dismiss, the district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). In doing so, the district court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

III.    **LAW & ANALYSIS**

   **A. Breach of Contract Claims (Counts I, II, and III)**

Plaintiff alleges that Defendant breached the Policy in three different ways. Based on the analysis below, the Court finds that Plaintiff has adequately pleaded all three of his breach of contract claims.

Under Ohio law,[2] an insurance policy is a contract between the insurer and the insured. *Nationwide Mut. Ins. Co. v. Marsh*, 15 Ohio St. 3d 107, 109 (1984). The interpretation and construction of insurance policies is a matter of law to be determined by the court using

---

[2]    Defendant asserts, and Plaintiff does not contest, that Ohio law governs Plaintiff's claims.

general rules of contract interpretation and construction. *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St. 2d 166, 167–68 (1982). "When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties." *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 11. The court must examine the insurance contract as a whole and presume the language used in the policy reflects the intent of the parties. *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 2007-Ohio-4917, ¶ 7. "[A]bsent some special circumstance, such as a contractual definition, or a commercial or technical meaning acquired by usage and intended to be used by the parties . . . the entire policy must be considered and construed in a fashion which *accords words and phrases therein their natural and usual meaning*." *Gomolka*, 70 Ohio St. 2d at 172–73 (emphasis added).

Where the provisions of an insurance policy are clear and unambiguous, courts must apply the terms as written and not enlarge the contract by implication "nor read into the contract a meaning not placed there by an act of the parties." *Id.* at 168 (citations omitted). However, "if an insurance policy is ambiguous, the policy is construed strictly against the insurer." *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 421 (6th Cir. 2020) (citing *Andersen v. Highland House Co.*, 93 Ohio St. 3d 547, 550 (2001)). "This is particularly true when considering provisions that purport to limit or qualify coverage under the policy." *Westfield Ins. Co. v. Hunter*, 2011-Ohio-1818, ¶ 11 (citing *Am. Fin. Corp. v. Fireman's Fund Ins. Co.*, 15 Ohio St.2d 171, 173 (1968). A provision in an insurance policy is ambiguous if it has more than one reasonable interpretation. *See Hacker v. Dickman*, 75 Ohio St. 3d 118, 119–20 (1996).

### 1. Cost of Insurance Rates and Determination of Rates (Count I)

The Policy provision at issue in Count I states that: "[t]he cost of insurance rates will be determined by us *based on* our expectation as to future mortality experience." Compl., Doc.

6

1, ¶ 25 (emphasis added). As explained, Plaintiff alleges that this language permitted Defendant to determine the cost of insurance rates by exclusive reference to Defendant's expectations as to future mortality experience, but that Defendant used other, unauthorized factors, including non-mortality-related expenses, to determine those rates. *Id.* ¶¶ 26, 31.

In opposition, Defendant focuses on the "based on" language, which is not defined in the Policy. Defendant asserts that "based on" does not connote exclusivity but instead indicates that Defendant is only required to "consider" future mortality experience as a "factor when computing the cost of insurance rates," and that "the factor must be 'foundational' to, but not the exclusive basis of, the cost of insurance rates determination." Doc. 20, PageID 190. To find otherwise is to rewrite the Policy provision from '"based on' expectations of future mortality experience" to "based *only* on [expectations of future mortality experience]." *Id.* at PageID 187.

Defendant cites to two Eleventh Circuit cases in support: *Slam Dunk I, LLC v. Conn. Gen. Life Ins. Co.*, 853 F. App'x 451 (11th Cir. 2021) and *Advance Tr. & Life Escrow Servc., LTA v. Protective Life Ins. Co.*, 93 F.4th 1315 (11th Cir. 2024). In *Slam Dunk I*, the Eleventh Circuit considered an insurance policy governed by Florida law that provided, in relevant part:

> Monthly Cost of Insurance Rates are *based on* the Insured's Attained Age, the type of benefit, the Class of Insured and whether premiums for that Insured are paid directly to [the defendant insurer] or through payroll deductions. The Monthly Cost of Insurance Rates are determined by [the defendant insurer] *based on* its expectations as to future mortality experience . . . .

*Slam Dunk I, LLC*, 853 F. App'x at 452 (emphasis added). When considering this language, the Eleventh Circuit rejected the plaintiff's assertion that the term "based on" meant that the cost of insurance rates would be exclusively determined by reference to "its expectations as to future mortality experience" because, in part, the immediately preceding sentence indicated

that those rates would also be based on the insured's age, type of benefit, the class of insured, and the method of premium payment. *Id*. at 454. The Eleventh Circuit reasoned that "[h]aving been used twice to refer to different factors, the phrase 'based on' cannot connote exclusivity without leading to an absurd or internally inconsistent result." *Id*. at 455.

Likewise, in *Advance Trust*, the Eleventh Circuit found that the term "based on" in a similar policy provision governed by South Carolina law did not connote exclusivity given dictionary definitions indicating that "base" means a "main ingredient," "a supporting or carrying ingredient," "the fundamental part of something," "[s]omething on which a thing stands or by which it is supported," and "[t]he principal ingredient, the fundamental element." *Advance Tr.*, 93 F.4th at 1333; *see also Norem v. Lincoln Benefit Life Co.*, 737 F.3d 1145, 1149–51 (7th Cir. 2013) (finding that use of phrase "based on" factors in a policy governed by Illinois law meant that factors were illustrative rather than exhaustive given dictionary definitions and common understanding of the phrase).

Defendant also relies on *NASCAR Holdings, Inc. v. McClain*, 2022-Ohio-4131. There, the Ohio Supreme Court interpreted a statute that allowed Ohio to tax a business's gross receipts from contracts that allowed others to use its intellectual property "to the extent that the receipts are based on the right to use property in [Ohio]." *Id.* ¶ 7 (quoting O.R.C. § 5751.033(F)). The Ohio Supreme Court reviewed language in sample agreements governing NASCAR's contracts for broadcast revenue, media revenue, licensing fees, sponsorship fees, sanction fees, memberships, and competition. *Id.* ¶¶ 34–46. But "[n]one of the sample contracts tied payments to the right to use property in Ohio." *Id.* ¶ 30. Instead, the agreements granted broad rights to the use of NASCAR's intellectual property over large geographical territories, such as "anywhere in the United States," that included Ohio. *Id.* ¶ 34. Accordingly,

the Ohio Supreme Court determined that payments to NASCAR under such contracts were not "based on" the right to use property in Ohio. *Id*. ¶ 36. The Ohio Supreme Court explained that something is "based on" another if "the second thing is foundational to the first . . . . " and that "'[i]n common talk, the phrase 'based on' indicates a but-for causal relationship and thus a necessary logical condition.'" *Id*. ¶ 31 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 63 (2007)).

Plaintiff presents two responses. First, he contends that the phrase "based on" is at least ambiguous as to whether it indicates exclusivity. In so doing, he relies on two cases from the Eighth Circuit: *Meek v. Kansas City Life Ins. Co.*, 126 F.4th 577 (8th Cir. 2025) and *Voght v. State Farm Life Ins.*, 963 F.3d 753 (8th Cir. 2020).

In *Meek*, the Eighth Circuit analyzed an insurance policy governed by Kansas law that provided that "'[t]he cost of insurance . . . is based on the insured's sex, age[,] and risk class' and [the defendant life insurance company's] expectations as to future mortality experience.'" *Meek*, 126 F.4th at 586. Relying on the canon of *expressio unius est exclusio alterius*, which means "the expression of one thing is the exclusion of the other," the Eighth Circuit found that by listing specific factors, the provision excluded other unenumerated factors. *Id*. The Eighth Circuit in *Meek* also found that even if the provision allowed the insurer "room to consider other factors," those factors were limited to "things of the same kind or within the same classification" as those listed. *Id*. (internal quotation marks and citation omitted). Moreover, the Eighth Circuit concluded, that to the extent the provision was ambiguous, it had to be resolved against the insurer, because the insurer drafted the policy. *Id*. at 587–88.

Similarly, in *Voght*, the Eighth Circuit interpreted a policy governed by Missouri law that provided that monthly cost of insurance rates "are based on the Insured's age on the

policy anniversary, sex, and applicable class rate." *Voght*, 963 F.3d at 761. The plaintiff alleged that when determining those rates, however, the insurer used unenumerated factors including "taxes, profit assumptions, investment earnings, and capital reserve requirements." *Id*. The Eighth Circuit explained that because the policy did not define the phrase "based on," it used the "plain and ordinary" meaning of the phrase by reference to how a reasonable person would understand the policy language. *Id*. at 763. The Eighth Circuit in *Voght* further concluded the phrase "based on" was "at least ambiguous" because: "a person of ordinary intelligence purchasing an insurance policy would not read the provision and understand that where the policy states that the [cost of insurance] fees will be calculated 'based on' listed mortality factors that the insurer would also be free to incorporate other, unlisted factors into this calculation." *Id*. at 763–64. The Eighth Circuit further noted that because the insurer drafted the provision and could have clearly indicated its ability to use other factors, the provision had to be construed against it. *Id*. at 764. Moreover, the Eighth Circuit noted that a split of authority about the meaning of "based on" in similar policy provisions supported the conclusion that the phrase was ambiguous. *Id*.

After reviewing these, and other authorities the parties cite, the Court finds that the parties have both offered reasonable interpretations as to whether the term "based on" in this Policy provision is ambiguous under Ohio law. That said, the Court need not resolve the ambiguity issue at this time because Plaintiff makes a second argument that the Court finds compelling. Specifically, Plaintiff contends that even if Defendant is correct, and that the phrase "based on our expectation as to future mortality experience" means that expectations of future mortality experience must only be a foundational, but not exclusive, factor when computing the cost of insurance rates, *see* Doc. 20, PageID 190, Plaintiff does not allege that

10

Defendant uses expectations of future mortality experience *and* other unauthorized factors in its rate computations. Doc. 25, PageID 237–38. Rather, Plaintiff has alleged that Defendant considered unauthorized factors, including, without limitation, non-mortality-related expenses. Compl., Doc. 1, ¶ 31. Therefore, even if Defendant is correct, and it is only required to make expectations of future mortality experience a foundational factor, a fair reading of Plaintiff's Complaint includes a challenge as to whether Defendant considered that foundational factor at all. *See Advance Tr. & Life Escrow Servs., LTA v. ReliaStar Life Ins. Co.*, Civil No. 18-2863, 2022 WL 911739, at * 5 (D. Minn Mar. 29, 2022) (denying summary judgment where policy provided that "rates will be based on" expected future mortality experience and the plaintiff produced evidence that could lead a jury to conclude that expected future mortality experience was ignored).

For these reasons, the Court finds that Plaintiff has adequately pleaded a breach of contract claim in Count I of his Complaint. Defendant's Motion to Dismiss Count I is **DENIED**.

### 2. Monthly Expense Charge (Count II)

Count II concerns Policy provisions governing deductions for expenses from Plaintiff's Account Value. The Policy states that, in the first month, the Account Value equals the first premium minus both the monthly deduction and the "monthly expense charge shown on Page 3." Compl., Doc. 1, ¶ 18. For all subsequent months, the Account Value would be calculated with a deduction for "the monthly expense charge shown on Page 3." *Id*. Page three of the Policy states that the monthly expense charge is "$7.00 PER POLICY." *Id*. ¶ 28; Doc. 16, PageID 146.

Plaintiff asserts that these provisions impose a fixed and maximum $7.00 limit on the monthly amount that Defendant can deduct for expenses. Compl., Doc. 1, ¶¶ 28, 29, 61. Plaintiff further alleges, however, that Defendant exceeded this amount when it incorporated undisclosed and unauthorized expenses into its monthly cost of insurance deductions—by using those undisclosed and unauthorized expenses to determine the cost of insurance rates—and thereby effectively charged Plaintiff more than the $7.00 maximum for expenses. *Id.* ¶¶ 61, 62.

In its Reply, Defendant argues, for the first time, that the monthly expense charge on page three of the Policy is not "an independent cap on expenses" that Defendant is allowed to collect. Doc. 26, PageID 264–66. It is well settled, however, that courts generally do not entertain issues raised for the first time in reply briefs because opposing parties do not have the opportunity to respond to the issues newly raised. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); *see also Books A Million, Inc. v. H & N Enterprises, Inc.*, 140 F. Supp. 2d 846, 859 (S.D. Ohio 2001) (citing *Aetna Cas. and Sur. Co. v. Leahey Constr. Co., Inc.*, 219 F.3d 519, 545 (6th Cir. 2000)).

That is what Defendant has done here. The core of Defendant's Motion to Dismiss is that it was not required to determine the cost of insurance rates by exclusive reference to its expectations of future mortality experience. Doc. 20, PageID 186–91. Nowhere in that opening motion does Defendant argue that the $7.00 expense charge on page three of the Policy did not cap the amount it could charge for expenses. *Id.* In Reply, however, Defendant devotes several pages to advancing this new argument. Doc. 26, PageID 264–66. This untimely argument is not properly before the Court.

12

In any event, the Court finds that the provisions at issue in Count II are at least ambiguous. True, the parties do not point to any Policy provision expressly indicating that Defendant would limit its monthly expense charge to $7.00. But the Policy states that the Account Value would include a deduction for "*the* monthly expense charge shown on Page 3." Compl., Doc. 1, ¶ 18 (emphasis added). A policy holder could reasonably interpret the phrase "*the* monthly expense charge" to mean that there was only one monthly expense charge, and that its amount was "shown on Page 3," which states: "$7.00 PER POLICY." *Id.* ¶ 28; *see McClure v. State Farm Life Ins.*, 608 F. Supp. 3d 813, 823 (D. Ariz. 2022) (finding "the monthly expense charge is $5.00" ambiguous at best under Arizona law; policy holders could reasonably read language to mean that the monthly charge would be "$5.00, no more, no less" and that it included all monthly expenses for the policy); *Bally v. State Farm Life Ins. Co.*, 587 F. Supp. 3d 996, 1001 (N.D. Cal. 2022) (finding "the monthly expense charge is $5.00" in a policy governed by California law unambiguously indicated that the expenses included in monthly deductions would be $5.00 and insurer breached that duty by including "additional expense loads" in the cost of insurance rates).

Accordingly, the Court finds that Plaintiff has adequately pleaded breach of contract in Count II of his Complaint. Defendant's Motion to Dismiss Count II is **DENIED**.

### 3. Improving Expectations as to Future Mortality Rates (Count III)

The Policy provisions at issue in Count III also involve the cost of insurance rates that Plaintiff challenges in Count I. The provision states as follows:

> Any change in the monthly cost of insurance rates charged will be on a non-discriminatory basis toward any one insured and will apply to all insureds of the same age, sex, and classification whose policies have been in effect the same length of time, not to exceed the maximum rates shown on Page 6. *The cost of insurance rates will be determined by us based on our expectation as to future mortality experience.*

13

Compl., Doc. 1, ¶ 25 (emphasis added).

Plaintiff points to the second sentence above and alleges that, because mortality rates have generally improved (*i.e.*, people are living longer), this provision obligated Defendant to reduce its cost of insurance rates accordingly, but Defendant failed to do so. *Id.* ¶¶ 66, 67.

On the other hand, Defendant points to the first sentence in the provision above and argues that it proves that the Policy did not require it to redetermine the cost of insurance rates. Doc. 20, PageID 191–92. Particularly, Defendant argues that this sentence, which indicates that changes to the cost of insurance rates would be uniformly applied to policy holders, does not mean that Defendant was required to lower the cost of insurance rates. *Id.* Instead, Defendant argues, it merely explains how changes to cost of insurance rates would be applied to policy holders if Defendant opted, in its sole discretion, to make such changes. *Id.* at PageID 191. In essence, Defendant argues that it had no contractual obligation to decrease the cost of insurance rates, even if the expectations of mortality experience improved. *Id.* at PageID 192.

The Court finds that the provision is, at best, ambiguous. The Policy does not expressly indicate that Defendant was required to adjust the cost of insurance rates. But the provision states that the rates "will be determined" by Defendant based on its expectation as to "future" mortality experience. Use of the term "will be" arguably implies an ongoing obligation to make rate determinations. Moreover, the term "future" arguably implies that those determinations would evolve—for better or worse—and that Defendant's rate determinations would reflect that evolution. *See McMillan v. Kansas City Life Ins. Co.*, 1:22-cv-01100, 2023 WL 2499746, at *12 (D. Md. Mar. 14, 2023) (finding the phrase "the cost of insurance rates used will be determined by us *based on* our expectations as to future mortality experience"

14

ambiguous under Maryland law; "the word *future* arguably indicates that the [cost of insurance] rates are to be adjusted.").

Moreover, the indication that Defendant's rate determination will be "based on" its "expectation as to future mortality experience" implies that changes in Defendant's expectations would result in an adjustment to the underlying rate. Otherwise, the determination would no longer be "based on" Defendant's expectations. *See PHT Holding II LLC v. N. Am. Life Ins. Co. for Life & Health Ins.*, 674 F. Supp. 3d 532, 544 (S.D. Iowa 2023) (applying Florida law and finding it "difficult to accept" that the cost of insurance rates "may still be 'based on' [expectations as to future mortality experience]—even if those expectations have changed"); *Bella v. Wilton Reassurance Life of New York*, No. 23-cv-1613, 2025 WL 1616851, at *5–6 (S.D.N.Y. June 5, 2025) (applying New York law and finding that policy term stating, "cost of insurance rates are determined by us, based on our expectations as to future mortality experience" did not grant insurers unfettered discretion as a matter of law to never modify cost of insurance rates).

Consequently, the Court finds that Plaintiff has adequately pleaded breach of contract in Count III of his Complaint. Defendant's Motion to Dismiss Count III is **DENIED**.

### 4. Plaintiff's Purportedly Contradictory Claims

Defendant also argues that all of Plaintiff's breach of contract claims (Counts I, II, and III) should be dismissed because they are contradictory. Defendant contends that Plaintiff alleges that Defendant used unauthorized factors to determine the cost of insurance rates— while also alleging that he was unaware of Defendant's wrongdoing because Defendant affirmatively concealed its use of unauthorized factors in its rate determinations, and that Defendant possesses the actuarial information and equations underlying its computations.

15

Doc. 20, PageID 184–86. But Plaintiff does not allege that he is simultaneously unaware and aware of Defendant's practices. Rather, Plaintiff alleges that he was unaware of Defendant's actions until he engaged counsel in June 2022. Compl., Doc., 1, ¶ 40. Discovery may reveal when Plaintiff's breach of contract claim accrued, and if any alleged fraudulent concealment equitably tolls the relevant statute of limitations. But those issues are not readily apparent from the Complaint or otherwise before the Court at this Motion to Dismiss stage.

### B. Conversion (Count IV)

In Count IV, Plaintiff alleges that Defendant wrongfully exercised control over his personal property by making excessive or unauthorized deductions from his Account Value, and that this constituted conversion. Compl., Doc. 1, ¶¶ 71, 72, 74. Defendant moves to dismiss for several reasons, including that Plaintiff's conversion claim, and his alleged damages for conversion, are duplicative of his breach of contract claims. Doc. 20, PageID 198–99.

Defendant is correct. Under Ohio law, "the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981); *see also Pham Constr. & Co., LLC v. Tran*, 2024-Ohio-634, ¶ 34 (5th Dist. 2024). "A tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." *Id.* (citation omitted). Additionally, a plaintiff must prove "actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach of the contract." *Washington Marine, LLC v. Kunz*, No. 1:24-cv-505, 2024 WL 4767770, at *2 (S.D. Ohio Nov. 13, 2024) (citation omitted). Moreover,

16

"[a] conversion claim cannot be based upon property rights that arise entirely from contractual rights." *Id.* (citation omitted).

Here, Plaintiff alleges that Defendant's monthly deductions for the cost of insurance were excessive because they were based on cost of insurance rates that Defendant determined by using unauthorized factors. Plaintiff's claim is based entirely on Defendant's obligation to calculate monthly deductions in accordance with the Policy's terms. Accordingly, Plaintiff's conversion claim does not arise from a duty that Defendant owed him independent of the Policy. Nor does Plaintiff allege that he suffered any damages as a result of Defendant's allegedly wrongful acts (*i.e.*, miscalculation of the cost of insurance) that are in addition to the damages that he attributes to Defendant's alleged breach of contract.

For these reasons, Plaintiff's conversion claim fails as a matter of law. Defendant's Motion to Dismiss Count IV is **GRANTED**.

### C. Declaratory Judgment (Count V)

Plaintiff asserts a claim for "Declaratory Relief" in his Complaint, and requests that the Court declare the parties' respective rights and duties under the Policy. Compl., Doc. 1, ¶ 82. Defendant contends that this claim is duplicative of Plaintiff's breach of contract claims.

> Defendant is correct. The Sixth Circuit recognizes that:
>
> The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that '[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.' But [Section] 2201 does not create an independent cause of action.

*Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) (quoting 28 U.S.C. § 2201). In short, declaratory judgment is a remedy, not an independent claim. *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 587 (6th Cir. 2021) ("Injunctive relief is not a cause of action, it is a remedy.")

(internal quotation marks and citation omitted); *see also Weiner v. Klais & Co.*, 108 F.3d 86, 92 (6th Cir. 1997) (observing that declaratory judgment is "a form of relief, not a cause of action."), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002).

Declaratory relief is a remedy applied most often before an injury-in-fact occurs. *Gregor v. Rice Drilling D, LLC*, No. 2:21-cv-3999, 2024 WL 169119, at *3 (S.D. Ohio Jan. 16, 2024) (citing *National Rifle Assn's of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997)). As a result, courts have found that "declaratory relief is inappropriate when the 'claims have already ripened into a cause of action.'" *Id.* (quoting *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 938 (S.D. Ohio 2012)). Moreover, if a plausible breach of contract claim has been asserted, courts will dismiss a request for declaratory relief under 28 U.S.C. § 2201 as redundant and duplicative. *Id.* (citations omitted). For example, in *Miami Valley*, the court held that where the "validity and enforceability of the contracts have already been placed at issue" by a breach of contract claim, declaratory relief is not appropriate because the "claim for damages is a better and more effective remedy." *Miami Valley*, 852 F. Supp. 2d at 938; *see also, e.g.*, *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 908 (6th Cir. 1999) ("[I]t is clear in the present case that a declaratory judgment would be redundant with the relief already sought for breach of contract.").

Here, Plaintiff's claims have ripened into claims for breach of contract. In addition, Plaintiff's request for declaratory judgment is predicated on the same allegations as his breach of contract claims. Indeed, Plaintiff claims that he seeks declaratory relief because "Defendant has breached the [Policy][,]" and he "therefore seeks a declaration of the parties' respective rights and duties under the [Policy]." Compl., Doc. 1, ¶¶ 81, 82. The adjudication of Plaintiff's breach of contract claims will necessarily decide the meaning of the contractual terms. In

addition, a declaratory judgment would not settle the parties' controversies because Plaintiff seeks damages for Defendant's alleged breaches.

Thus, in this case, "the validity and enforceability of the contracts [has] already been placed at issue, and Plaintiff['s] claim for damages is a better and more effective remedy." *Miami Valley*, 852 F. Supp. 2d at 938. Because Plaintiff's declaratory judgment claim is duplicative, it is dismissed. *See id.* at 938–39 (dismissing declaratory judgment claim because it was duplicative of breach of contract claim). Defendant's Motion to Dismiss Count V is **GRANTED**.

## IV.   CONCLUSION

For these reasons, Defendant's Motion to Dismiss (Doc. 20) is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion to Dismiss Counts I, II, and III of Plaintiff's Complaint is **DENIED**. Defendant's Motion to Dismiss Counts IV and V is **GRANTED**.

**IT IS SO ORDERED.**

September 30, 2025
                                                                    Jeffery P. Hopkins
                                                    United States District Judge